**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LEVI McRAE LUGINBYHL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-456-JED-TLW |
| | ) | |
| **STANLEY GLANZ, Sheriff;** | ) | |
| **RICHARD WEIGEL, Undersheriff;** | ) | |
| **S. HOLLOWAY, Sgt. Law Library;** | ) | |
| **STEVE BRADSHAW, Chaplain;** | ) | |
| **SERGEANT STRAIT;** | ) | |
| **SCOTT DEAN, Capt, Deputy Sheriff;** | ) | |
| **J. BENNETT; E. MENDENHALL;** | ) | |
| **ADEMOLA SONOWO, Deputy;** | ) | |
| **K. FICKETT; J. BARLOW;** | ) | |
| **SERGEANT RESSER; B. BYRD** | ) | |
| **DEPUTY HUCKEBY;** | ) | |
| **JAIL ADM'R CLERK KITCH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff Levi McRae Luginbyhl, a state prisoner appearing *pro se*. Before the Court is the motion to dismiss, or alternatively, motion for summary judgment filed by Defendants Bradshaw, Byrd, and Fickett (Docs. 27, 28). Defendants also filed a Special Report (Doc. 26). Plaintiff filed responses to both the Special Report and the dispositive motion (Docs. 30, 31). Plaintiff also filed a motion for appointment of counsel (Doc. 32), and a "petition to consider newly discovered evidence of the Sheriff's Office misconduct" (Doc. 33). For the reasons discussed below, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motions.

## PROCEDURAL BACKGROUND

When Plaintiff filed his civil rights complaint (Doc. 1), on August 14, 2015, Plaintiff was a pretrial detainee in custody at the Tulsa County Jail (TCJ). On March 9, 2016, during the pendency of this action, Plaintiff was convicted and sentenced and is now in custody of the Oklahoma Department of Corrections. By Order filed August 20, 2015 (Doc. 3), the Court directed Plaintiff to cure the filing fee deficiency and file an amended complaint using the court-approved form. On August 31, 2015, Plaintiff filed his amended complaint (Doc. 4), along with a motion to proceed *in forma pauperis* (Doc. 5). By Order filed October 20, 2015 (Doc. 10), the Court granted Plaintiff's motion to proceed *in forma pauperis* and advised Plaintiff that, pursuant to the provisions of the Prison Litigation Reform Act (PLRA), he was responsible for payment of the full filing fee of $350 in monthly installments.[1] To date, Plaintiff has paid no portion of the filing fee. The Court also dismissed without prejudice all counts raised in the amended complaint with the exception of the free exercise claim raised in Count 2, and dismissed all defendants except Defendants Steve Bradshaw, B. Byrd, and K. Fickett. *Id.* On April 9, 2016, Defendants filed their dispositive motion (Doc. 27), arguing that the amended complaint fails to state a claim upon which relief may be granted or, in the alternative, they are entitled to summary judgment (Doc. 28). They also claim that, because Plaintiff was a pretrial detainee at the time of the alleged constitutional deprivation, there is no claim for an Eighth Amendment violation. *Id.*

---

[1]After granting Plaintiff's motion to proceed *in forma pauperis*, the Court became aware that, since enactment of the PLRA in 1996, Plaintiff has filed, while a prisoner, at least four civil actions and appeals in federal courts that were dismissed either for failure to state a claim or as frivolous and that, as a result, Plaintiff may not proceed *in forma pauperis* unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Although the Court declined to revisit its ruling granting leave to proceed *in forma pauperis*, Plaintiff was advised that he will be subject to § 1915(g) restrictions in the future. *See* Doc. 15.

**FACTUAL BACKGROUND**

In Count 2 of the amended complaint, Plaintiff alleges that his religious dietary requirements are not being met in violation of the First and Eighth Amendments. *See* Doc. 4 at 30. Plaintiff alleges that TCJ officials have:

> . . . denied the plaintiff the right to a kosher diet while discriminating against him in so doing. [Defendant Bradshaw] caused the plaintiff to suffer cruel and unusually [sic] by not only denying the required kosher diet of his faith but by dening [sic] him the ceader [sic] plate and unleavened bread meals for Passover and the feast of unleavened bread for the year and denied him religious items such as bitter herbs and sea salt and unleavened bread wine and the required meals of the Hebrew Israelite faith.

*Id.* The Court notes that, in addition to identifying himself as a Hebrew Israelite, Plaintiff also claims that he "has been a member of The House of Yahweh for over 15 years." *Id.* at 19. He also mentions that he is provided a vegan diet. *Id.* at 21. Plaintiff states that he has submitted "over 13 requests and appeals" to Defendant Bradshaw and his "co-conspirators" and has been denied his right to a kosher diet. Plaintiff also alleges that "[o]ther inmates simularly [sic] situated are allowed such because they have representatives available to sign them up." *Id.* at 19. As his requested relief, Plaintiff seeks injunctive relief and $100,000 per defendant "for monetary damage, punitive damages for pain and suffering for mental and emotional anguish, for economical hardship, for cost of this litigation for filing fees and for up to five million U.S. dollars as this is pursuant to UCC 3-402, for any liability(s) times punitive damages and penalties with all rights reserved . . . ." *Id.* at 53.[2]

---

[2] Because Plaintiff is no longer in custody at TCJ, his request for injunctive relief is moot. *See generally Jordan v. Sosa*, 654 F.3d 1012, 1027-28 (10th Cir. 2011). In addition, the Court is aware that the PLRA provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although Plaintiff does not allege a physical injury attributable to his religious diet claims, neither Plaintiff nor Defendants raise the issue of the PLRA in their pleadings, motions, or responses. Therefore, the

3

# ANALYSIS

## A. Summary judgment standard

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Durham v. Xerox Corp.*, 18 F.3d 836, 838-39 (10th Cir. 1994).

## B. Plaintiff's claims and applicable standards

Plaintiff claims that his right to a diet conforming to his religious beliefs was violated during his incarceration at TCJ. *See* Doc. 4 at 30. Plaintiff lodges his claim against Defendant Bradshaw, the chaplain at TCJ. He also states "other officials involved were known only as b byrd, c Fairchild, K Fickett, g daulton, r winston," *id.* at 31, but only B. Byrd and K. Fickett are named as defendants in the amended complaint, *id.* at 1, 7, 11.

---

Court does not decide here whether Plaintiff's claim for compensatory damages against Defendants is barred by the PLRA.

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). Inmates clearly retain protections afforded by the First Amendment, *Pell v. Procunier*, 417 U.S. 817, 822 (1974), including its directive that no law shall prohibit the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam). In addition, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948), *abrogation on other grounds recognized in McCleskey v. Zant*, 499 U.S. 467 (1991). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives, including deterrence of crime, rehabilitation of prisoners, and institutional security. *Pell*, 417 U.S. at 822-23. Only beliefs which are sincerely held and rooted in religious beliefs trigger the Free Exercise Clause. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

"The Free Exercise Clause mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs." *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003) (citing *O'Lone*, 482 U.S. at 348). Accordingly, prisoners have a constitutional right to a diet conforming to their sincerely held religious beliefs, unless denying the diet is "reasonably related to legitimate penological interests." *Beerheide v. Suthers*, 286 F.3d 1179, 1184-85 (10th Cir. 2002). The Tenth Circuit has summarized the showing required to establish a violation of the Free Exercise Clause:

> It is well-settled that "[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Yet such protections are not without reasonable limitations. The Supreme Court has cautioned

that prison inmates are also subject to the "necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* Accordingly, the Court has held that "a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Id.* at 349.

Thus, in order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must first show that a prison regulation "substantially burdened ... sincerely-held religious beliefs." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). Consequently, "[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997). Second, prison officials-defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Boles*, 486 F.3d at 1182. At that point, courts balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91, to determine the reasonableness of the regulation:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles*, 486 F.3d at 1181.

*Kay*, 500 F.3d at 1218-19 (footnotes omitted).

**1. Claim against Defendants Byrd and Fickett**

In the amended complaint (Doc. 4), Plaintiff provides a list of "other officials involved" in the alleged denial of religious meals. *Id.* at 31. That list includes Defendants Byrd and Fickett. The summary judgment record demonstrates that both Defendants Byrd and Fickett responded to Plaintiff's kiosk requests for a religious diet. *See* Doc. 26-7 at 6, 8, 12, 15. Defendant Byrd responded to requests submitted to the kitchen and advised Plaintiff that the chaplain had to approve

6

religious diet requests. *Id.* at 6, 12. Defendant Fickett merely assigned Plaintiff's grievances to the chaplain. *Id.* at 8, 15.

Personal participation is an essential element of a § 1983 claim. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *see also Garrett v. Stratman*, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that medical official must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation). It is well established that the denial of a grievance alone does not constitute personal participation in the denial of a constitutional right sufficient to support a § 1983 claim. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (holding "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under [42 U.S.C.] § 1983").

Here, Plaintiff seeks to hold Defendants Byrd and Fickett liable because they were involved in processing his kiosk requests. But Plaintiff does not allege that either Defendant had any knowledge of or personal involvement in providing his religious diet. Nor does Plaintiff controvert defendants' summary judgment evidence demonstrating that Defendants Fickett and Byrd only responded to or forwarded grievances and played no role in providing Plaintiff's religious diet. *See* Docs. 27-3, 27-5. As a result, Plaintiff fails to satisfy the personal participation element of a § 1983 claim. Therefore, Defendants Byrd and Fickett are entitled to judgment as a matter of law and their motion for summary judgment shall be granted.

**2. Claims against Defendant Bradshaw**

As stated above, Plaintiff describes his claims against Defendant Bradshaw as follows:

> The defendant C Bradshaw and his co-conspirators in over 13 requests and appeals denied the plaintiff the right to a kosher diet while discriminating against him in so denying. This defendant caused the plaintiff to suffer cruel and unusually by not only denying the required kosher diet of his faith but by denying him the ceader [sic]

7

> plate and unleavened bread meals for Passover and the Feast of Unleavened Bread for the year and denied him religious items such as bitter herbs and sea salt and unleaven[ed] bread wine and the required meals of the Hebrew Israelite faith.

(Doc. 4 at 30). In seeking summary judgment, Defendant Bradshaw argues that Plaintiff fails to state a claim upon which relief may be granted and that, because Plaintiff was a pretrial detainee at the time of the alleged violation, the Eighth Amendment claim fails.

### a. Eighth Amendment applies to only convicted prisoners

To the extent Plaintiff specifically invokes protections afforded by the Eighth Amendment in claiming that the alleged denial of a kosher diet amounted to cruel and unusual punishment, his claim fails. The Eighth Amendment's protections do not arise until after an individual is convicted of a crime. *See Hudson v. McMillian*, 503 U.S. 1 (1992) (analyzing Eighth Amendment claim of inmate assaulted by prison guards); *Whitley v. Albers*, 475 U.S. 312 (1986) (analyzing Eighth Amendment claim of inmate shot by prison guard); *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) (holding "prisoners already convicted of a crime who claim that their punishments involve excessive force must proceed under the . . . Eighth Amendment's 'cruel and unusual punishments' clause"). Plaintiff was a pretrial detainee at the time of the incidents giving rise to his claims. Accordingly, his Eighth Amendment rights are not implicated.

Nonetheless, a pretrial detainee enjoys at least the same protections as a convicted criminal. *Blackmon v. Sutton*, 734 F.3d 1237, 1240-41 (10th Cir. 2013). The conditions of a pretrial detainee's confinement are constitutionally protected under the Due Process Clause of the Fourteenth Amendment. *See Estate of Booker v. Gomez*, 745 F.3d 405, 418-19 (10th Cir. 2014). Pretrial detainees "cannot be punished at all," let alone in a cruel and unusual manner. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). The government "may subject [a pretrial detainee] to

the restrictions and conditions of the detention facility [only] so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). A court must distinguish between "punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." *Id.* at 537. To determine if a pretrial detainee has been subject to punishment, "we must ask whether an expressed intent to punish on the part of the detention facility officials exists. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Blackmon*, 734 F.3d at 1242.

Here, nothing in the record suggests that Defendant Bradshaw's decisions with regard to Plaintiff's religious diet were intended as punishment. Furthermore, as discussed below, Plaintiff has not demonstrated that his rights under the Free Exercise Clause were restricted. As a result, the protections of the Due Process Clause of the Fourteenth Amendment are not implicated.

### b. First Amendment – Free Exercise Clause

Based on the undisputed facts, Plaintiff has failed to make the showing required to establish a Free Exercise Clause violation. Plaintiff has not shown that Defendant Bradshaw's application of TCJ's religious diet policy substantially burdened his sincerely-held religious beliefs. The summary judgment record demonstrates that once Plaintiff sent Chaplain Bradshaw a request for a kosher diet, Plaintiff chose and was provided a "vegan religious diet," one of three religious diets available under TCJ's religious diet policy in effect at the time of Plaintiff's request.[3] *See* Doc. 27-7

---

[3]In the Special Report, counsel for Defendants explains that:

[d]uring the relevant time period, the Tulsa County Jail provided inmates requesting

at ¶ 6. After choosing this diet, Plaintiff stated "I guess a vegetarian diet is kosher enough." *See* Doc. 26-7 at 10. In his response to the Special Report, Plaintiff acknowledges that he said his diet selection was "kosher enough," but explains his acceptance of the diet by stating that he chose the vegetarian diet "to avoid eating contaminated meats . . . ." *See* Doc. 30 at 2-3. However, Plaintiff provides nothing to demonstrate that the vegan/vegetarian religious diet he received "substantially burdened his sincerely-held religious beliefs" in any way.

Furthermore, Plaintiff's allegation that Defendants failed to accommodate his special dietary requests for Passover and the Feast of Unleavened Bread is not sufficient to show a violation of his right to free exercise of his religion. Significantly, Plaintiff first requested that he be accommodated for the Feast of Unleavened Bread on March 17, 2015. *See* Doc. 26-7 at 10. In another request, submitted March 24, 2015, Plaintiff advised that Passover was April 3, 2015, or only 10 days later. Under TCJ's "Religious Programs" Policy 18-01(1.4)(D.3)(a), an inmate was required to submit a request for any special religious observances to the chaplain sixty (60) days prior to the event. *See* Doc. 34 at 3. Thus, Plaintiff failed to submit his request for special accommodations for the 2015 Passover within the time frame imposed by TCJ policy. In addition, Defendant Bradshaw's failure to provide the Passover religious items occurred one time. Thus, his omission was, at most, an isolated act of negligence, not pervasive violations of Petitioner's right to free exercise of religion.

---

special diets with one of three options (standard pork-free diet, vegan religious diet, or vegetarian religious diet) . . . The Plaintiff is no longer in the custody of the TCSO and those individuals who made the decision to replace kosher meals with vegan or vegetarian meals are no longer employed with the TCSO. Kosher meals have been added back to the menu for the inmates who require them.

*See* Doc. 26 at 6-7.

*See White v. Glantz*, No. 92-5169, 1993 WL 53098, at *2 (10th Cir. Feb. 25, 1993) (unpublished)[4] ("Although the Plaintiff was most certainly annoyed and exasperated, [the] isolated negligent act of the Defendants cannot support a claim that the Plaintiff was denied his First Amendment right to freedom of religion."); *see also Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ( "[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."). Petitioner's allegation that Defendant Bradshaw did not timely approve his requests for religious accommodations does not support a claim that Defendant substantially burdened his religious beliefs, i.e., that he violated Plaintiff's right to free exercise of religion. Defendant Bradshaw responded to each of Plaintiff's religious accommodation requests and while Plaintiff may have preferred that he be provided the religious items he requested, Plaintiff has not shown that Defendant's failure was anything more than an isolated act of negligence. *Gallagher*, 587 F.3d at 1070.

Lastly, the Court notes that in response to the Special Report, Plaintiff challenges the TCJ Policies cited by Defendants and also seeks "to hold any of the unlisted defendants Stanley Glanz, Ken Farnham, Belly McKelvey, or Shannon Clark liable or responsible . . . ." *See* Doc. 30 at 4-5. However, with the exception of Stanley Glanz, those potential defendants and claims were not identified in the amended complaint and are not part of this action. *See Evans v. McDonald's Corp.*, 936 F.2d 1087 (10th Cir. 1991) (citing *Fisher v. Metropolitan Life Insurance Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) (stating that a claim raised for the first time in response to a defendant's motion for summary judgment was not properly before the district court)); *see also Car Carriers,*

---

[4]This and other unpublished opinions cited herein are not precedential but are cited for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

*Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a [dispositive motion]"). In fact, the Court has previously found that "Plaintiff does not identify a policy or custom that was the moving force behind the alleged constitutional violations." *See* Doc. 10 at 8. Based on that finding, the Court determined that "to the extent Plaintiff has sued defendants in their official capacities, the complaint fails to state a claim upon which relief may be granted and any official capacity claim is dismissed without prejudice." *Id.* The Court will not consider new claims against new defendants raised for the first time in Plaintiff's response to the Special Report.

In summary, as to Plaintiff's free exercise claim against Defendant Bradshaw, Plaintiff fails to controvert Defendant's summary judgment evidence. The Court finds there is no genuine issue as to any material fact and Defendant Bradshaw is entitled to judgment as a matter of law. His motion for summary judgment shall be granted.

### c. Equal Protection claim

In the "Nature of Case" section of the amended complaint, Plaintiff also alleges that "other inmates similarly situated are allowed [a kosher diet] because they have representatives available to sign them up, thus discriminating against the plaintiff." *See* Doc. 4 at 19. To the extent Plaintiff brings an equal protection claim, the Court finds the claim is insufficient to proceed. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quotations and citation omitted). To sustain a claim under the Equal Protection Clause, the plaintiff must make a prima facie showing that he was treated differently from

others who are similarly situated and that the acts forming the basis of the claim were motivated by a discriminatory purpose. *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). Because the plaintiff is a prisoner, his equal protection claims are analyzed using the *Turner* analysis. *Washington v. Harper*, 494 U.S. 210, 223-24 (1990); *Patel v. Wooten*, 15 F. App'x 647, 650 (10th Cir. 2001) (unpublished).

Even though the Court construes *pro se* pleadings liberally, Plaintiff must present factual support for his allegations if he is to withstand defendants' motion for summary judgment. Plaintiff fails to produce any evidence to support his equal protection claim, however, and the Court finds that summary judgment on this issue is appropriate.

## C. Plaintiff's motions

On June 7, 2016, Plaintiff filed a motion for appointment of counsel (Doc. 32). In light of the resolution of Defendants' dispositive motion discussed above, the Court denies Plaintiff's motion for appointment of counsel.

On June 7, 2016, Plaintiff also filed a "petition to consider newly discovered evidence of the Sheriff's Office misconduct" (Doc. 33). Plaintiff claims that "the Sheriff's Office has destroyed all of his records and property" during the pendency of this matter. *Id.* As a result, Plaintiff alleges that his ability to make amendments and review the record has been "prohibited." *Id.* However, Plaintiff fails to identify records or property allegedly destroyed. Therefore, any relief requested in the motion is denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 28) is **granted**. The alternative motion to dismiss (Doc. 27) is **declared moot**.

2. Plaintiff's motion for appointment of counsel (Doc. 32) and motion "to consider newly discovered evidence of the Sheriff's Office misconduct" (Doc. 33) are **denied**.

3. This is a final order terminating this action.

4. A separate judgment in favor of defendants shall be entered in this matter.

5. Plaintiff remains obligated to pay, in monthly installments, the full $350 filing fee for this action.

ORDERED THIS 20th day of January, 2017.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE